for about $4,900 were for borrowed money, but in the very next question and answer, apparently in the same connection, he refers to goods bought, and the proofs of debt by the holders of these notes show that the consideration of each was merchandise. I do not think it clearly appears that the special master was in error in his finding of fact.

[1] But the matter is controlled to the same effect by a question of law. It clearly appears that the statement was made by the bookkeeper from the books, at the request of Maloof, the husband and manager of business for Mrs. Maloof, and both the making of it and its falsity, if false, were wholly unknown to, and not specially authorized by, her. Supposing the statement to be false, to the knowledge of Maloof, as respects the rights of Daniel Miller Company, which was deceived by it, Mrs. Maloof is bound by the acts of her agent in the transaction. Having acquired their goods, she cannot repudiate the means by which they were obtained. The debt is one for property obtained by fraud, and is not affected by a discharge in bankruptcy under section 17 (b) of the Bankruptcy Act (Comp. St. § 9601).

[2] But to deny her a discharge would be to extend the benefit to other creditors, who were not misled by the fraud, and who have no right to redress on account of it, and thus to inflict a punishment or penalty on Mrs. Maloof. Section 17 undertakes to do justice between the bankrupt and special creditors. Section 14 (Comp. St. § 9598), relating to bar of discharges, does justice between the bankrupt and the law, and the denial of a discharge thereunder is in the nature of a penalty on the bankrupt for conduct which is supposed to show him unworthy of the grace of a discharge. The acts which bar a discharge are in general the personal acts of the bankrupt and some of them crimes, and may not be committed by the unauthorized acts of agents.

This seems to be implied in the rulings in this Circuit as to the fraudulent act of a copartner not prejudicing an innocent member of the firm as respects the latter's discharge. Hardie v. Swafford Trust Co., 165 F. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785; Re Cotton & Preston (D. C.) 183 F. 181; Regan-Malone Co. v. Cotton & Preston, 200 F. 546, 118 C. C. A. 640; Franklin v. Monning Dry Goods Co., 217 F. 929, 133 C. C. A. 601. These cases were decided without reference to the amendment of 1910 touching false statements as a ground for refusing a discharge. That amendment made it quite clear that the false statement must be the personal act of the bankrupt himself, though it might be made to an agent of the creditor, for the amendment added the italicized words to make section 14b (3) read "obtain money or property on credit upon a materially false statement in writing, made *by him* to any person or *his representative* for the purpose of obtaining credit," etc. Since a corporation can act only by an agent, it may be fully bound for the moral quality of its agent's fraudulent act in obtaining credit, and a natural person should be bound by any such act directly authorized or connived at and thus adopted. But a general discharge is not forfeited by a natural person through a wholly unauthorized and unknown fraud of an agent in buying goods. Frank v. Michigan Paper Co., 179 F. 776, 103 C. C. A. 268, 30 L. R. A. (N. S.) 623.

The mere unexplained shrinkage of assets during six months preceding a bankruptcy might be enough to defeat a homestead, but is not sufficient to show a concealment of property from the trustee in bar of a discharge. The special master's conclusion is affirmed, and the discharge ordered.

---

### In re FOX.

(District Court, W. D. Louisiana. July 6, 1924.)

No. 2438.

1. **Bankruptcy ⊚⟹396(4)—Printer's machinery and tools exempt under Louisiana statute; "tools and instruments necessary for exercise of trade or profession."**

Under Code Prac. La. art. 644, exempting to a debtor "tools and instruments necessary for the exercise of the trade or profession by which he gains a living," which, as construed by the Supreme Court of the state, includes the printing press and materials of a printer, the fact that a part of such articles of a bankrupt, who is a job printer, are incumbered by liens as to which the exemption does not apply, or in which he has waived exemption, does not affect his right to claim those unincumbered as exempt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tools— Tools of Trade.]

2. **Bankruptcy ⊚⟹396(4) — Exemption exists only so long as property is used for purposes for which it is exempted.**

To entitle a bankrupt to the benefit of a state statute exempting the tools of his trade, he must show that they are being so used, or that it is his purpose to re-engage in such trade or business within a reasonable time, as soon as circumstances will permit.

In Bankruptcy. In the Matter of Simon P. Fox, bankrupt. On review of order of referee disallowing exemptions. Affirmed.

Dickson & Denny, of Shreveport, La., for bankrupt.

Wise, Randolph Rendall & Freyer, of Shreveport, La., for opponent.

DAWKINS, District Judge. [1] The bankrupt in this case was a job printer, and all of his machinery, including press, equipment, etc. (except certain articles claimed as exempt), were covered by chattel mortgage or other liens which equaled or exceeded their value. Hence, in making his surrender, he listed upon his schedules that portion of the property constituting his printing business which was not so covered, and claimed it as exempt under article 644 of the Louisiana Code of Practice, which exempts from seizure "* * * tools and instruments necessary for the exercise of the trade or profession by which he gains a living. * * *" This claim was opposed by certain of the creditors "for the reason that there is no authority or warrant in law or fact for such exemption."

The referee sustained the opposition and disallowed the exemption, as disclosed by the following report:

"I, J. M. Grimmet, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceedings: Whether or not the bankrupt is entitled to claim as exempt certain printing fixtures and equipment, on the ground that the said equipment are tools and instruments with which the bankrupt earns a living. Your referee having decided the question adversely, application for review has been filed and allowed, and the said question is certified to the judge for his opinion thereon."

The Supreme Court of Louisiana has held that a printer falls within the class of persons contemplated by article 644 of the Code of Practice as entitled to the exemption, and that, "where it is shown that a party depends entirely upon his trade as a printer and editor for means of support, his printing press and materials necessary for the exercise of his trade are exempt from seizure under article 644, C. P." Prather v. Bobo, 15 La. Ann. 524.

Since it has been found as a fact by the referee that the property now in dispute did constitute a part of the equipment necessary for the conducting of the printing business (in which finding I concur), I am of the opinion that it would make no difference that the remainder was incumbered with liens and claims as to which the exemption would not apply. It is clear that a waiver of such exemptions as to claims carrying a privilege thereto could operate alone in favor of such claimant, and would not destroy the debtor's right to the exemption. 25 C. J. verbo "Exemptions," p. 86, § 144, subtitle "Mortgage," and authorities cited in footnote. Neither would it make any difference, in my opinion, that the bankrupt had, in his surrender, conceded the right of such privileged creditors to enforce their claims against a portion of the property. Harris v. Haynes, 30 Mich. 140; 25 C. J. p. 35, verbo "Exemptions," § 48.

[2] However, the exemption exists only so long as the exempt property is used for the particular trade or profession, and in order to claim it I think the bankrupt should either show that it is being so used, or that it is his purpose to re-engage in the business within a reasonable time and as soon as circumstances will permit. I do not believe that it is necessary that he actually have at the time a complete establishment, as held by the referee; but, to sustain the right, he should show that he intends and has a reasonable prospect of re-engaging in the trade or occupation for which the exempt property is adapted. In this case the bankrupt has made no such showing. For aught that appears, he has abandoned the trade of a job printer, and, for that reason, the exemption has ceased to operate. See authorities last cited; also McLeod v. Noble, 122 La. 714, 48 So. 161.

For the reasons stated, the finding of the referee is sustained and made the judgment of the court.