### VENTO v. AMICI.

No. 1443.

Court of Appeal of Louisiana.
First Circuit.

March 4, 1935.

James H. Morrison, of Hammond, for appellant.

Rownd & Warner, of Hammond, for appellee.

LE BLANC, Judge.

Plaintiff was the lessor and defendant the lessee of a certain farm consisting of 10 acres of land, together with the buildings and improvements thereon, situated about 2½ miles south of the city of Hammond in the Seventh ward of Tangipahoa parish. The principal crop cultivated on the property seems to have been strawberries.

On April 30, 1934, plaintiff instituted this proceeding, alleging in his petition that, whilst the whole of the rental for the property was not due before May 1, 1934, he was informed and he believed that defendant was about to remove his property and effects from the leased premises, and, setting out the lien and privilege accorded him by law, asked for and obtained from the court, an order for a writ of provisional seizure.

Acting under the authority of the writ which subsequently issued, the marshal of

the city court seized and took in his possession the following property: "One Essex Super-six coach Motor No. 377546 La. 1934 License No. 41-857, 1 Light red horse-mule, 1 pair hames, trace chains, 1 horse collar and bridle, 1 Chattanooga middle buster, 1 cultivator and the proceeds of the crop of strawberries."

The defense to the action is a denial of the allegation that defendant was about to remove any property from the leased premises and a claim that all the property seized, with the exception of the Essex automobile, was exempt from seizure, being tools and implements necessary for the exercise of defendant's trade or profession by which he gained his living and that of his family. With regard to the seizure of the proceeds of the strawberry crop, although it does not appear in the pleadings, the issue is raised in brief of counsel for defendant in this court that the lien claimed was lost when the crop had been converted into money or other proceeds. In a reconventional demand, defendant asks for damages against plaintiff as for the illegal seizure of his property in the sum of $75, of which amount $25 is for attorney's fees and $50 for exemplary damages.

In the lower court there was judgment in favor of the plaintiff with recognition of his privilege on all the property seized, and defendant's reconventional demand was dismissed. The judgment also maintained the writ of provisional seizure and ordered the plaintiff's claim to be paid by preference out of the proceeds of the sale thereunder. From that judgment, defendant has taken this appeal.

The law which grants to the lessor a right of pledge for the payment of his rent and other obligations under the lease, on the movable effects of the lessee, on the leased premises, is found in article 2705 of the Civil Code. Following the general statement to the effect that the lessor enjoys such right of pledge, the article more explicitly provides that "In the case of predial estates, this right embraces everything that serves for the labors of the farm, the furniture of the lessee's house, and the fruits produced during the lease of the land; and in the case of houses and other edifices, it includes the furniture of the lessee, and the merchandise contained in the house or apartment, if it be a store or shop."

By this language, we understand the law to make a distinction between the rights of the lessor of a predial estate and that of an urban estate, if we may so refer to a lessor of a house or other edifice. The distinction seems to be well marked. In the case of the lessor of a farm, the pledge extends to "everything that serves for the labors of the farm," and goes even further and includes the furniture of the lessee's house and the crops produced during the lease. In the case of the lessor of a house or building, the pledge covers the furniture of the lessee and the merchandise in the building if it be a store or shop.

Following the paragraph quoted, in which this distinction is made, comes the one in which the exemptions in favor of the lessee are specified. That paragraph reads as follows: "But the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, his clothes and linen, and those of his wife and family; his bed, bedding and bedstead, and those of his wife and family; his arms, military accoutrements, and the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family."

The lease in this case was one of a predial estate and the question that arises is, Does the exemption as to the tools and implements provided for in the paragraph of the article of the Code just quoted apply to the lessee, as claimed by him? Under the construction placed by our courts on the use of the words "tools and implements" in our exemption statutes, the articles seized in this case might very well be considered as coming within the class that is comprehended by that term. In view, however, of the provisions of the right of pledge of the lessor of a predial estate which "embraces everything that serves for the labors of the farm," the real issue here is, Does the exemption under the use of that term apply to the lessee engaged in the occupation of farming, the same as it does to one exercising any trade or profession?

The articles claimed to be exempt by the defendant unquestionably were things that served "for the labors of the farm" and, as under the article of the Code the right of pledge of the lessor of a farm "embraces everything that serves for the labors of the farm," it would be destructive of that very right to hold that these same articles are exempt as "tools and implements" of the lessee "necessary for the exercise of his trade or profession." It is impossible to reconcile these two provisions of the same article under such a process of reasoning, and the conclusion seems irresistible to us that the exemption of "tools and instruments" therein pro-

vided applies to the lessee who exercises some particular trade or profession in the generally accepted sense of those terms and not to one who is engaged in the occupation of farming.

 We have been referred to none, nor can we find any case in the jurisprudence of this state where the exact claim that is here being made has ever been presented to the courts. The case which, in our opinion, comes the nearest to it, is that of A. Wilbert's Sons Lumber & Shingle Co. v. Ricard, 167 La. 416, 119 So. 411, 413. The lessee in that case was engaged in the occupation of farming on the lands which he had leased from the plaintiff landlord, and the object seized on which he claimed the exemption was a screened motortruck with which he transported slaughtered beeves and cattle to market. The exemption was allowed on the ground that the lessee was found to make his living from the business or trade of slaughtering and transporting cattle to market as well as his occupation of farming, and, since the truck was used by him in transporting the slaughtered cattle to market, it was held to be an instrument "necessary to carry on the particular calling" in which he was engaged. It is rather significant that in describing the use to which this truck was put that the court said that it "was not bought for the farm; was never used on the farm in any manner connected with the growing, harvesting, or marketing the products of the farm. It was purchased and used by the relator to transport his slaughtered beeves to market, it being admitted that he was regarded as a wholesale dealer in slaughtered beeves." The inference seems to us to be that, had the truck been "used on the farm in any manner connected with the growing, harvesting or marketing of the products of the farm," it would not have been exempt. In the agreed statement of facts in the case before us, it is made to appear that, without the seized property claimed to be exempt, the lessee could not farm the land. Undoubtedly then, as we have already stated, that property constituted things that served for the labors of the farm, and, as such, under the provisions of article 2705, Civ. Code, was embraced within the right of pledge granted to the lessor, and is not exempt under the further provisions of that article.

We find nothing in article 644 of the Code of Practice, as amended by various acts of the Legislature which militates against the provisions of article 2705, Civ. Code, in reference to the right of pledge of the lessor on the movable effects of the lessee found on the leased property, and especially so in the case of a lease of a predial estate where the right of pledge embraces everything that serves for the labors of the farm. That article of the Code of Practice therefore does not enhance the defendant's claim for exemption in any way whatever. See Stewart v. Lacoume, 30 La. Ann. 157.

 The other contention of the defendant is that plaintiff's lien on the crop of strawberries had been lost after the same had been converted into money or other proceeds, and consequently the proceeds from the sale of that crop were not subject to seizure. The same article of the Civil Code which we have had under consideration provides that the right of pledge of the lessor of a predial estate embraces also the "fruits produced during the lease of the land." There is no contention made that these strawberries from which these proceeds had been realized had not been produced during the lease of the land. The proceeds stand in the place of the crop and have become, for the purpose of the lessor's pledge, the "fruits produced during the lease of the land." Of course if these proceeds had been applied by the lessee to the payment of some other debts he owed, the rights of third parties would have intervened, and it may well have been then that the lien and privilege of the lessor would have been lost. There are no such rights appearing in this case, however, and, as between the lessor and the lessee, the only two parties interested, we hold that the former's pledge on the proceeds from the crop exists, and his claim of a privilege thereon was correctly maintained.

The judgment appealed from is affirmed.

MOUTON, J., not participating.