The ruling on this point by the commissioner and approved by the court was correct.

For the reasons assigned, the judgment appealed from is affirmed.

FOURNET, J., dissents.

O'NIELL, C. J., absent.

170 So. 240

**YOUNG v. GETER.**

No. 33945.

Oct. 6, 1936.

Stephens & Gahagan, of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellee.

FOURNET, Justice.

The Judges of the Court of Appeal, Second Circuit of Louisiana, availing themselves of the provisions of section 25 of article 7 of the Constitution of 1921, have submitted for our instructions three questions of law which arose in the above-entitled case, pending before them on appeal from the Tenth judicial district court in and for the parish of Natchitoches.

The facts of the case, as certified to by the Court of Appeal, are in substance as follows: O. L. Young, who had leased his farm to the defendant, H. W. Geter, provisionally seized for the payment of his rent the movable property belonging to the defendant found on the leased premises; the defendant claims that from the property seized, the hereinafter described property is exempt from seizure and sale for rent, under the provisions of article 644 of the Code of Practice and the exemption clause of article 2705 of the Revised Civil Code, as amended by Act No. 107 of 1934, viz.: Two turning plows; one cultivator; one disc; two sweepstocks; two side harrows; blacksmith shop; one mowing machine; two wagons; one brown

horse mule; one dark bay mule; one gasoline engine; one molasses mill; and six sets of harness.

The first question submitted for our instruction is: "Is the pursuit or occupation of farming a 'trade' or 'profession,' within the meaning of article 2705 of the Civil Code and article 644 of the Code of Practice?"

It is provided under article 2705 that "the lessor has, for the payment of his rent, * * * a right of pledge on the movable effects of the lessee, which are found on the property leased. * * * But the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, * * * the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family. * * *" And it is provided under article 644 of the Code of Practice that "the sheriff or constable can not seize * * * the tools and instruments, * * * necessary for the exercise of his or her calling, trade or profession by which he or she makes a living. * * *"

The plaintiff, however, contends that farming is not a "trade or profession" and, therefore, the exemption has no application in the case at bar, citing as authority therefor the doctrine laid down in the case of Vento v. Amici, decided by the Court of Appeal, First Circuit, reported in 159 So. 751, 752, wherein it was held that:

" * * * the conclusion seems irresistible to us that the exemption of 'tools and instruments' therein provided applies to the lessee who exercises some particular trade

or profession in the generally accepted sense of those terms and not to one who is engaged in the occupation of farming."

■ After reviewing the case of Vento v. Amici, supra, we are not satisfied with the reasoning of the court in arriving at its conclusion. It seems to us that the court overlooked the purpose of the exemption and narrowed down its opinion to a most technical meaning of the words "trade or profession." Moreover, when it concluded that the exemption "applies to the lessee who exercises some *particular trade or profession* in the generally accepted sense of those terms and not to one who is engaged in the occupation of farming," it thereby placed a limitation which is not included in the article, and violated one of the cardinal rules of construction of exemption laws, that is, that the intention of the lawmakers must be discovered and carried out, and to give that intention a broad and liberal interpretation conducive to the purpose of the exemption. (Italics ours.)

What was the intention and purpose of the Legislature in writing into article 2705 the exemption clause that "the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, * * * *the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family*"? (Italics ours.)

It is stated in Ruling Case Law, volume 11, § 3, p. 490, that:

"Exemption laws are enacted to prevent the unfortunate citizen from having all the necessaries of life swept away and to pre-

serve for him certain things reasonably necessary to enable him to earn a livelihood for himself and family. The sole purpose of all such laws is to protect the citizens of the state from being reduced by financial misfortune to absolute want, and to encourage industry and thrift and the building up of homes by placing beyond the reach of creditors the homestead and such tools, implements or appliances as a man may require to prosecute his business, whatever his walk in life or his occupation may be. Every man, even the extravagant and improvident, owes a first duty to those immediately dependent upon him. And so the state has an interest that no citizen shall be reduced to a condition of destitution so as to be prevented from prosecuting useful industrial employment for which he may be fitted, and that families shall not be deprived by extravagance or misfortune of the shelter and comforts necessary to health and activity."

On the same subject-matter, in Corpus Juris, vol. 25, p. 8, § 2, it is stated:

"In some jurisdictions the exemption is regarded as allowed for the benefit of the debtor, while in others it is regarded as in the nature of a police regulation primarily for the benefit of the community. *The purpose underlying all exemption legislation is the securing to the unfortunate debtor of the means to support himself and his family, the protection of the family being the main consideration.* * * * *" (Italics ours.)

In order to advance the humane purpose of preserving to the unfortunate debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public, it has become an almost universal rule that statutes creating an exemption should receive a liberal construction in favor of the debtor. 11 R.C.L. § 4, p. 490; 25 Corpus Juris, § 8, p. 10.

Although the exemption clause became a part of article 2705 (old article 2675) since 1852, nevertheless few cases involving the clause were presented to this court and none involving the question of the rights of a farmer to the exemption; but in determining whether the debtor is entitled to the exemption, this court has adopted the rule that whenever the claim to the exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption will be allowed. A. Wilbert's Sons Lumber & Shingle Co. v. Ricard, 167 La. 416, 119 So. 411; Sliman et al. v. Fish, 177 La. 38, 147 So. 493.

A careful review and consideration of all the cases involving the exemption clause under article 2705 of the Revised Civil Code and the construction of the clause itself convinces us that *our lawmakers incorporated the exemption clause in article 2705 of the Revised Civil Code,* which is a reproduction of Act No. 23 of 1852, as amended by Act No. 107 of 1934, *with the primary intention of protecting the means by which the debtor earns a living for himself and his family,* and that it was never their intention to limit the exemption to any particular trade or profession to the exclusion of so large a class of our citizens as is represented by the farming element. Furthermore, we think that

the clause "tools and instruments necessary for the exercise of the trade or profession" was intended to place a limitation upon the tools or instruments which the debtor is entitled to retain from the seized property, and in this case, forms the basis of question No. 3 submitted by the Court of Appeal.

Under Question No. 2, we are asked: "Does the exemption provided in article 2705 of the Civil Code prevail over the provisions of article 645 of the Code of Practice, and sections 1 and 2 of article 11 of the Constitution, as regards those chattels which constitute the 'tools and instruments' necessary for the exercise of the trade or profession by which he (the farmer) gains his living and that of his family?"

Section 1 of article 11, Constitution of 1921, provides that *"there shall be exempt from seizure and sale* by any process whatever except as herein provided, \* \* \* *the homestead,* \* \* \* owned by the debtor and occupied by him, \* \* \* *also two work horses,* \* \* \* whether these exempted objects be attached to a homestead or not, and *on a farm* the necessary quantity of corn and fodder, hay and potatoes, for the current year, *and the necessary farming implements,* to the value of two thousand dollars. \* \* \*" (Italics ours.)

Under section 2 of that article it is provided that *"this exemption shall not apply to the following debts,* to-wit: \* \* \* 5. *For rent,"* etc. (Italics ours.) Necessarily this refers only to the specific exemption provided for in section 1 of article 11 of the Constitution. It has no reference to and cannot apply to article 2705 of the Revised Civil Code, which gives the lessor the right of pledge on the movable effects of his lessee for the payment of his rent, and the exemptions provided for within that codal article. It is hornbook law that if the Legislature had the right to grant the landlord this right of pledge, by the same token it had the authority to grant such exemptions and make such limitations as it saw fit.

Neither has article 645 of the Code of Practice any application to the exemption allowed the debtor under article 2705 of the Revised Civil Code; it is merely complementary to and is placed in the Code for the purpose of carrying out the provisions of the Constitution relative to homestead exemptions.

To question No. 3, i. e., "within what limitations, as regards specific chattels, may the exemption be applied," our answer is that the facts of each case must be considered and will depend upon the class of farming, whether a rice, sugarcane, or truck farmer, etc., and the extent of the farming operations. The test is whether or not the chattels claimed to be exempt under the codal article by the debtor are necessary to operate his farm.

The above and foregoing are our answers and instructions to the questions propounded by the Court of Appeal for the Second Circuit.

O'NIELL, C. J., dissents and hands down opinion.

ROGERS and ODOM, JJ., dissent.

O'NIELL, Chief Justice (dissenting).

The question propounded in this case has never been presented to this court before. The question is whether, under article 2705 of the Civil Code, the lessor of a farm has, as security for the payment of his rent, a right of pledge on the agricultural implements belonging to the lessee and used by him in the cultivation of the farm. Article 2705 of the Code, which gives to the lessor this "right of pledge on the movable effects of the lessee, which are found on the property leased," declares, specifically, that, in the case of a lease of a farm, the lessor's right of pledge embraces everything that serves for the cultivation or working of the farm—thus: "In the case of predial estates, this right embraces everything that serves for the labors of the farm." The word "labors" is an inaccurate translation of the word *"exploitation,"* used in the French text of article 2675 of the Code of 1825.

There would be no doubt that the lessor's lien and "right of pledge" affects the farming implements belonging to the lessee and used by him in the cultivation of the leased land, but for the declaration, in the third and last paragraph of the article, that the lessee may retain, out of the property subjected by law to the lessor's privilege, "the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family." The question is whether this provision, which refers to the tools and instruments which are necessary for the exercise of a lessee's trade or profession, shall prevail over the specific declaration that, in the case of a predial estate, the lessor's right of pledge embraces every-thing that serves for the cultivation or "exploitation" of the farm.

The first and second paragraphs of the article of the Code were adopted originally as article 2675 of the Code of 1825—thus:

"The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased.

"In the case of predial estates, this right embraces every thing that serves for the labors of the farm, the furniture of the lessee's house, and the fruits produced during the lease of the land; and in the case of houses or other edifices, it includes the furniture of the lessee, and the merchandise contained in the house or apartment, if it be a store or shop."

The third paragraph of this article was enacted not as an amendment of the article but as an independent statute, being Act No. 23 of 1852, p. 13, approved February 11, 1852, viz.:

"That the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, his clothes and linen and those of his wife and family; his bed, and those of his wife and family; his arms, military accoutrements, and the tools and instruments necessary for the exercise of the trade or profession by which he gains his living, and that of his family."

In the revising of the Civil Code, in 1870, the provisions of Act No. 23 of 1852 were adopted as a part of article 2675, which became article 2705 of the Revised Civil Code.

I do not believe that the Legislature intended, by allowing a lessee, by the act of 1852, to retain, out of the property subject to the lessor's lien and pledge, the tools and instruments necessary for the exercise of any trade or profession by which the lessee might earn his living, to abolish the lessor's lien on the farming implements belonging to the lessee, on the theory that they were tools or instruments necessary for the exercise of the trade or profession of farming. The purpose of the act of 1852 was to exempt from the lessor's lien any tools or instruments belonging to any lessee, whether of a predial or of an urban estate, and necessary for his exercising any trade or profession which he might be dependent upon for a livelihood. The occupation of farming is not a trade or profession. In Webster's New International Dictionary, the occupation of "farming" is defined as the "act or business of cultivating land." As an intransitive verb, to "farm" is defined as "to engage in the business of tilling the soil." The same dictionary defines the word "trade," as a noun, as "the business which a person has learned, and which he engages in for procuring subsistence, or for profit; occupation; especially, mechanical employment as distinguished from the liberal arts, the learned professions, and agriculture; as, we speak of the *trade* of a smith, of a carpenter, or mason, but not now of the *trade* of a farmer, or a lawyer, or a physician." The words "trade or profession," in the article of the Civil Code, appear in the French text of the act of 1852 as *"métier ou de la profession."* The French word *métier* means *trade,* or

*handicraft,* in its ordinary acceptation, and would not, ordinarily, include the occupation of a farmer. In fact, the French word *métier* is almost synonymous with *profession.*

It is true that article 644 of the Code of Practice forbids a sheriff, in the execution of a writ of fieri facias, to seize the tools or instruments necessary for the exercise of the *calling,* trade or profession by which the debtor makes his living; and it is not unreasonable that the occupation of farming might be called a *calling.* But the article of the Code of Practice, in which the word *calling* is used, has reference to the ordinary debts, or debts generally, of a debtor, and not a debt secured by a lessor's lien and right of pledge on the property of the debtor. If the Legislature had intended that the expression in the act of 1852 "trade or profession" should include any and all occupations for the earning of a livelihood, the Legislature would have so provided in the act of 1852, or in the revision of the article of the Civil Code, or in the subsequent amendment thereto. We must bear in mind, therefore, that the exemption granted by article 644 of the Code of Practice, of the specified kinds of property of the debtor, has reference to his ordinary debts; while the exemption granted by the act of 1852, now a part of article 2705 of the Civil Code, has reference only to debts secured by a lessor's lien or right of pledge.

Perhaps it would be the better part of wisdom and of fairnesss for the Legislature to exempt a farmer's agricultural implements from a lessor's lien; but we have

nothing to do with the wisdom .or policy of the law. When the Legislature says that the lessor's lien and right of pledge embraces everything that serves for the exploitation of the farm, the Legislature leaves no occasion for a court of justice to decide whether farming is or is not a trade or profession. Hence, I respectfully dissent from the prevailing opinion in this case.